## DEAN *v.* THE STATE.

1. A court of equity will not enjoin the commission of crime generally; but it has jurisdiction, and will in a proper case, at the instance of the State, restrain an existing or threatened public nuisance, though the offender is amenable to the criminal laws of the State.
2. That the act of which abatement by injunctive process is sought is made penal by statute neither gives nor ousts jurisdiction in chancery. Accordingly, injunction will not lie at the instance of the State to restrain one from engaging in the practice of treating persons according to the chiropractic method, merely because such person is amenable to the criminal laws of the State, in that he has not taken the prescribed examination and obtained a license from the State board of medical examiners, required of practitioners of medicine.

No. 2177.   APRIL 13, 1921.

Injunction. Before Judge Thomas. Colquitt superior court. July 27, 1920.

Upon the information of the commissioner of health of Colquitt county, the solicitor-general of the Southern Circuit, in the name of the State, brought an equitable action in the superior court of that county against Clay L. Dean. The petition alleges that the defendant is a chiropractor; that he visits the homes of the people in the community and county for the purpose of treating diseases, and maintains an office and place of business in the city of Moultrie, said county, where he treats diseases; that he lacks the necessary skill and training to combat the spread and growth of communicable diseases, and is maintaining a public nuisance in the practice of his profession, in that, without having obtained a license to practice medicine from the state board of medical examiners as required by statute, he engages in the practice of his pro-

fession in said county. The petition generally charges the defendant with misdeeds and with malpractice, to the injury of his patients and to the injury of the good morals and health of the public at large. The prayer is that he be restrained and enjoined from "treating any person or persons or prescribing or directing any method of treatment, or in any other manner violating the laws of said State regulating the practice of medicine." The defendant's answer admits that he is a chiropractor, as alleged in the petition; that he is engaged in the practice of his profession for compensation; and that he has not taken the prescribed examination and obtained a license from the State board of medical examiners, as required of practitioners of medicine. All other allegations of fact are expressly denied. He contends that he does not practice medicine; that he neither prescribes nor administers drugs or medicines in the treatment of disease; that he is not required, as a chiropractor, to take the examination and to obtain a license from the State board of medical examiners, as provided by the act approved August 18, 1913 (Acts 1913, p. 101), and the several acts amendatory thereof; and that if any of the statutes of this State require him, as a chiropractor, to take the prescribed examination and to obtain a license from the State board of medical examiners, required of practitioners of medicine, such statutes are unconstitutional, for reasons stated. Upon the hearing for interlocutory injunction the chancellor passed an order enjoining the defendant as prayed. To this order the defendant excepted.

*Shipp & Kline,* for plaintiff in error.

*C. E. Hay,* solicitor-general, *Dowling & Askew,* and *Johnson & Scott,* contra.

GEORGE, J. (After stating the foregoing facts.) The chancellor did not pass upon any issue of fact raised by the pleadings. He based his order enjoining the plaintiff in error from practicing his profession as a chiropractor expressly upon the ground that the act of the General Assembly, approved August 18, 1913 (Acts 1913, p. 101), and the several acts amendatory thereof, were valid statutes of this State and applicable to the plaintiff in error; and that the practice of his profession by the plaintiff in error without having complied with the provisions of the statutes aforesaid constituted a violation of the criminal law of the State. Since the chancellor did not exercise his discretion upon the disputed issues

of fact involved, the evidence introduced at the interlocutory hearing becomes unimportant.

For the purposes of this case, and for the purposes of this case only, the validity of the statutes involved, as construed and applied by the chancellor, will be conceded. Section six of the act approved August 18, 1913 (Acts 1913, pp. 101, 103), declares that it shall be unlawful for any person to practice medicine in this State without having first taken the prescribed examination and obtained a license from the State board of medical examiners authorizing him so to do. Section sixteen of the act declares that any person practicing medicine in this State without complying with the provisions of the act shall be guilty of a misdemeanor, and upon conviction thereof shall be punished as prescribed in section 1065 of the Penal Code of 1910. Neither the act approved August 18, 1913, nor any of the acts amendatory thereof, declares one who engages in the practice of medicine in this State without having first taken the prescribed examination and obtained a license from the State board of medical examiners to be a public or common nuisance. None of the medical acts of this State undertake to extend the jurisdiction of equity over nuisances or to enlarge the category of public nuisances. The unlawful practice of medicine in this State is simply declared to be a misdemeanor. The question is, therefore, whether equity, at the instance of the State, will enjoin as a common nuisance one who is engaged in the practice of medicine (conceding that the plaintiff in error is engaged in the practice of medicine) who has not taken the prescribed examination and obtained a license from the State board of medical examiners authorizing him to engage in the practice of medicine in this State. The question may be stated as follows: will equity, at the instance of the State, enjoin a person from practicing the profession of medicine simply because such person has failed to take the prescribed examination and to obtain a license from the State board of medical examiners authorizing him so to do, in violation of the penal laws of the State? To state the question is to answer it. The chancellor did not find that the practice of plaintiff in error's profession worked hurt, inconvenience or damage to any particular person or to the public or to any particular part of the public. If the plaintiff in error had obtained the license required of practitioners of medicine, the same acts and

conduct complained of in the petition, so far as determined by the chancellor, would have been legal and would have worked no hurt, inconvenience, or damage to any particular person, to the public at large, or to any part of the public. It is settled law that a private nuisance may injure either person or property or both, and in either case a right of action accrues to the person injured. Civil Code (1910), § 4456. It is also settled law that if a public nuisance causes special damage to a private citizen, he has a right of action therefor. Civil Code (1910), § 4485; *Holman* v. *Athens Empire Laundry Co.,* 149 *Ga.* 345, 349 (100 S. E. 207, 6 A. L. R. 1564), and cases there cited. It is also settled in this State that as a general rule a public nuisance gives no right of action to any individual, but must be abated by process instituted in the name of the State. Civil Code (1910), § 4454. If a criminal act affect the whole community, or a part of the community necessarily brought in contact therewith, the act may be abated by process in the name of the State as a public nuisance, although criminal. *Walker* v. *McNelly,* 121 *Ga.* 114 (48 S. E. 718). Where an act, though made penal by statute, is per se a public nuisance, it may generally be abated by injunction on petition brought in the name of the State. *Brindle* v. *Copeland,* 145 *Ga.* 398 (89 S. E. 332). While " equity has no jurisdiction, upon the petition of individuals, to interfere in matters merely criminal, or to enjoin any one from the commission of a crime, when it does not appear that the act complained of affected any property rights of the individuals " (*O'Brien* v. *Harris,* 105 *Ga.* 732, 31 S. E. 745), equity has jurisdiction, in a proper case, to enjoin a public nuisance upon information filed by the solicitor-general. Under the Civil Code (1910), § 4454, " Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." It may also be said that a nuisance is either public or private or mixed. It may likewise be said that a public nuisance is one which causes hurt, inconvenience, or damage to the public generally, or such part of the public as necessarily come in contact with it. It is obvious that a nuisance may be public though it does not necessarily consist in any act or thing which does in fact cause hurt, inconvenience, or injury to all of the public; generally it is sufficient if it injures those of the public who may come in contact with it.

These general principles may be subject to certain limitations, but it is unnecessary to notice the limitations here. Before the first medical act of Georgia (Ga. Laws 1880-81, p. 172) it was not illegal to practice medicine, as such, in Georgia without examination and without license. The treatment of diseases according to the chiropractic method can not be classed as a common or public nuisance. It is not per se a nuisance. The chancellor has refused to find in this case (even if it be conceded that he was authorized so to find) that the treatment of persons according to the chiropractic method, as practiced by plaintiff in error, was harmful to his patients, or to any part of the public, or to the public generally as noted above. The mere fact that the plaintiff in error in practicing his profession without a license may be guilty of a misdemeanor will not authorize a court of equity to enjoin him from practicing his profession. If the medical acts of this State are applicable to the plaintiff in error, he is amenable to criminal prosecution. Unless the legislature sees fit to extend the jurisdiction of equity or to enlarge the category of public nuisances (conceding the power of the legislature so to do), equity will not enjoin the plaintiff in error from practicing his profession simply because in so doing he is violating the penal laws of the State (conceding the validity of the medical acts, as construed and applied by the chancellor).

*Judgment reversed. All the Justices concur, except Atkinson, J., disqualified.*